### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**ST. PAUL FIRE & MARINE**                                          **PLAINTIFF**
**INSURANCE COMPANY**

**V.**                          **CASE NO. 4:05-CV-00483 GTE**

**GLOBAL TITLE COMPANY, INC., et al.**                          **DEFENDANTS**

### ORDER GRANTING SUMMARY JUDGMENT

Before the Court is a Motion for Summary Judgment filed by Plaintiff St. Paul Fire &

Marine Insurance ("St. Paul"). Gregory Hopkins, as Successor Receiver for Global Title

Company, Inc. ("Successor Receiver"), has filed a response in opposition to the motion. Mr.

Hopkins is the only Defendant who responded to the summary judgment motion.[1]

St. Paul seeks a declaration that it owes no duty to defend or indemnify Defendants

Global Title Company, Inc. ("Global") or Mary O'Hanlon Smith a/k/a Mary Nash ("Smith") in

connection with certain claims filed against them by Defendants Columbian National Title

Insurance Company ("Columbian"), Arley Rabey, Jr. ("Rabey"), John Bradley Martin ("Martin"),

and Daniel C. Deguisne and Rebecca L. Desguisne (collectively, the "Desguisnes") in Arkansas

state courts. The underlying state court litigation will be referred to collectively as the

"Underlying Litigation." In the Underlying Litigation, Columbian, Rabey, Martin, and the

Desguisnes seek (or sought) restitution for losses incurred as a result of Ms. Smith's (Global's

president) admitted misappropriation and diversion of Global escrow and operating account

funds.

For the reasons stated below, the Court concludes that St. Paul is entitled to judgment as a

---

[1] Stipulations of Dismissal have been entered as to Defendants Christina O'Hanlon-Bevins and John Bradley Martin. Defendant Columbian National Title Insurance and Plaintiff agreed to a Stipulated Dismissal with prejudice.

matter of law.

## FACTS WITHOUT MATERIAL CONTROVERSY

The following facts are taken from the Statement of Facts submitted by St. Paul and

uncontroverted by the Successor Receiver.

### I.   <u>Relevant Policy Provisions</u>

St. Paul began providing professional services liability insurance to Global on May 24,

2004, pursuant to a Real Estate Professional Services Liability Protection Policy (Policy No.

GL00645093), effective May 24, 2004 through May 24, 2005 (the "Policy").  The Policy's basic

coverage provision provides:

> **Real estate professional services liability**.  We'll pay amounts any
> protected person is legally required to pay as damages for covered loss
> that:
>
>> • results from real estate professional services by or for you;
>>
>> • is caused by a wrongful act committed on or after the retroactive
>> date and before the ending date of this agreement; and
>>
>> • results in a claim or suit first made or brought against a protected
>> person and reported to us while this agreement is in effect, or
>> during the limited reporting period or the extended reporting
>> period, if either one applies.
>
> We'll consider each wrongful act in a series of related wrongful acts to be
> committed on the date the first wrongful act in the series of related
> wrongful acts is committed.

(Policy, Pl.'s Exh. 1 at P0450 p. 2).

The Policy contains the following exclusion provisions:

> **Handling of Funds.**  We won't cover loss that results from any of the
> following:
>
>> • Any unauthorized act committed by any protected person that

deprives an owner of the use of their funds.

• Any unauthorized use of funds by any protected person.

• Mixing client-funds with any protected person's funds.

• The failure of any protected person to properly account for funds.

(Pl.'s Exh. 1 at P0450 p. 10).

**Criminal, Dishonest o Fraudulent Wrongful Acts or Knowing Violations of the Rights or Laws.** We won't cover loss that results from any criminal, dishonest, or fraudulent wrongful act or any knowing violation of rights or laws committed by:

• The protection person; or

• Anyone with the consent or knowledge of the protected person.

However, we won't apply this exclusion to our duty to defend that protected person until it has been determined that such criminal, dishonest, or fraudulent wrongful act or such knowing violation of rights or laws was committed.

(Pl.'s Exh. 1 at P0450 p. 10).

**Known wrongful acts.** We won't cover loss that results from any wrongful act, including any part of related wrongful acts, that any protected person knew about before the beginning date from which we or any of our affiliated insurance companies have continuously provided this professional services liability protection.

(Pl.'s Exh. 1 at P0450 p. 11).

## II.   The Underlying Litigation

As noted above, the underlying state court litigation is referred to collectively as the "Underlying Litigation" but is described more particularly and in a summary fashion below. The Underlying Litigation is described in detail in St. Paul's Statement of Material Undisputed Facts[2]

---

[2] *See* St. Paul's Statement of Material Facts, Doc. No. 80, at ¶¶ 23 - 64, for a complete description of the state court litigation.

### (1)    The Columbian Litigation

Columbian National Title Insurance Company filed a lawsuit in Pulaski County Circuit Court on October 15, 2004 naming as Defendants Global, Mary Smith and Christina Bevins (the "Columbian Litigation").  Therein, Columbian alleged that the named Defendants misappropriated hundreds of thousands of dollars from Global's escrow and operating funds and used the misappropriated funds for their personal use.   Jack Cameron, Global's prior receiver, requested that St. Paul provide a defense and coverage to Global against the claims asserted against Global in the Columbian Litigation.  On or about January 24, 2005, St. Paul agreed to defend Global in the Columbian Litigation subject to a full reservation of rights to deny or otherwise limit its coverage pursuant to the terms and conditions of the Policy.

### (2)    The Rabey Litigation

Arley Rabey, Jr. filed a lawsuit in Pulaski County Circuit Court on December 25, 2004 naming as defendants Daniel Deguisne, Rebecca Deguisne, Global, and Mary Smith a/k/a/ Mary Nash, (the "Rabey Litigation").   The Rabey Litigation subsequently was consolidated with the Columbian Litigation.  Mr. Rabey alleged that Global accepted a check from him in the amount of $87,374.16, representing funds for a real estate purchase by Mr. Rabey, but that Global's check to payoff the manufactured home sold to Mr. Rabey was returned for insufficient funds. On or about January 24, 2005, St. Paul agreed to defend Global in the Rabey Litigation subject to a full reservation of rights to deny or otherwise limit its coverage pursuant to the terms and conditions of the Policy.   On April 15, 2005, a judgment was entered against Global and Mary Smith in the Rabey Litigation.

### (3)    The Martin Complaint

John Bradley Martin filed a Motion to Intervene in the pending Columbian Litigation on

or about December 14, 2004.  On January 25, 2005, the motion was granted and Mr. Martin filed its Complaint in Intervention naming as defendants Global, Mary Smith and others ("the Martin Complaint).  Mr. Martin alleged that Global received funds on behalf of the seller of real property now owned by Mr. Martin sufficient to pay all liens and associated expenses of the sale, but that Global failed to pay said liens and expenses and instead converted and misappropriated the escrow funds.  On or about January 24, 2005, St. Paul agreed to defend Global against the Martin Complaint subject to a full reservation of rights to deny or otherwise limit its coverage pursuant to the terms and conditions of the Policy.  On April 15, 2005, a judgment was entered against Global on the Martin Complaint.

### (4)       The Deguisnes Cross Claim

Daniel Deguisne and Rebecca L. Deguisnes (collectively, "the Deguisnes") filed an Answer, Cross Claim and Third Party Complaint (the "Deguisnes Cross Claim") in the Rabey Litigation.  The Deguisnes, as the sellers of a home to Arley Rabey, alleged that Global and Mary Smith unlawfully converted and misappropriated funds due to be paid the mortgage holder on behalf of the Deguisnes.  On or about January 24, 2005, St. Paul agreed to defend Global against the Deguisnes Cross Claim subject to a full reservation of rights to deny or otherwise limit its coverage pursuant to the terms and conditions of the Policy.  On April 15, 2005, a judgment was entered against Global and Mary Smith on the Deguisnes Cross Claim.

### III.    Mary Smith's Criminal Information and Guilty Plea

On March 23, 2006, the United States Attorney for the Eastern District of Arkansas, on behalf of the United States of America (the "Government"), filed a criminal Information against Mary Smith in an action entitled *United States of America v. Mary O'Hanlon Smith*, Case No. 4:06-CR-0110-JMM.  The following allegations are found in the Information, a copy of which is

attached as Exhibit 9 to Global's motion.  The Information charges at Count 1:

At all times material herein:

1.  Global Title Company was a corporation owned and operated by MARY O'HANLON SMITH.  It was the business of Global Title Company to act as the closing agent for real estate transactions.  In doing so, Global Title Company was to act as a fiduciary agent and:

    a.     Receive authorizations and documents from the buyer and the seller of the real estate;

    b.     Transmit documents and other materials to the buyer's financial institution;

    c.     Receive funds from the  buyer's financial institution;

    d.     Disburse the received funds according to the closing instructions for the real estate transaction, including disbursement of funds to pay off the seller's existing mortgage.

2.     MARY O'HANLON SMITH acted as the closing agent on each of the real estate transactions pertaining to this Information.

 (Information, Pl.'s Ex. 9).

The Information further charges that from on or about December 2003 through on or about October 2004, Mary Smith received funds from the buyer's financial institution and diverted the funds for her own use and benefit rather than disbursing said funds to pay off the seller's existing mortgage as required by the closing instructions.  (Information at ¶ 3).  As a result of this diversion of funds, Ms. Smith was alleged to have caused a loss to others in the amount of approximately $2,324,965.31.  Because Ms. Smith used the United States mail to carry out her fraudulent scheme, Ms. Smith was charged with mail fraud, a violation of 18 U.S.C. § 1341.  Count II of the Information charges Ms. Smith with failure to file tax returns for the calendar years 2002 and 2003, a violation of 26 U.S.C. § 7203.

Attached to the Information (and incorporated by reference) is a document entitled Attachment A, which contains a list of real estate transactions as to which Ms. Smith allegedly diverted funds, the closing date, amount of diverted funds, and the victim.  (Pl.'s Exh. 9,

Attachment A).  St. Paul contends (and the Successor Receiver has failed to dispute) that all of the transactions listed in Attachment A are transactions involving loss for which Columbian seeks, or has sought recovery from Global, Mary Smith and/or Cristina Bevins in the Columbian Litigation.

St. Paul alleges (and Ms. Smith's criminal file confirms) that Ms. Smith appeared before The Honorable James M. Moody on March 23, 2006, waived formal indictment, and entered a plea of guilty to the Information.  On that same date, Judge Moody accepted Mary Smith's guilty plea to Counts 1 and 2 of the Information.

## IV.   The St. Paul Insurance Policy Application

Mary Smith prepared, completed and signed the Application for Real Estate Professional Services and an Abstractors, Title Agents, Escrow Agents, or Closing Officers Supplement on behalf of Global.  The Application and Supplement were dated April 7, 2004.  On April 7, 2004, Mary Smith was a director of Global and its President.  In April of 2004, Global submitted the Application to St. Paul for the purpose of obtaining professional services liability insurance from St. Paul.

Question 30 on the Application asked:

> Do you or any members or employees of your firm know of any incident, act, error, or omissions that could reasonably result in a claim against you, the firm, or any current or former firm member?

Ms. Smith caused this Question to be answered "No."  Global claims that it relied upon this information in determining whether to agree to provide a quote to St. Paul.  St. Paul contends that had Ms. Smith disclosed in the Application that she previously had diverted Global escrow funds in four separate transactions on December 3, 2003, January 28, 2004, March 19, 2004 and March 31, 2004, St. Paul would have declined to provide Global with a quotation for the

requested insurance policy and, therefore, no policy would have been issued.

### V.      Stipulations that Loss Not Covered

In light of the guilty plea entered by Mary Smith, Defendant Columbian stipulated that the Policy issued by St Paul provides no insurance coverage for any claims or causes of action asserted by Columbian against Mary Smith, Global and Cristina Bevins in the Columbian Litigation.

In light of the guilty plea entered by Mary Smith, Defendant Martin stipulated that the Policy issued by St. Paul provides no insurance coverage for any claims or causes of action asserted by Mr. Martin against Mary Smith, Global and Cristina Bevins in the Martin Complaint.

In light of the guilty plea entered by Mary Smith, Defendant Cristina Bevins stipulated that the Policy issued by St. Paul provides no insurance coverage for any claims or causes of action asserted against Mary Smith, Global and Cristina Bevins in the underlying state court litigation.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).

The Eighth Circuit set out the burdens of the parties in connection with a summary

judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., "[to] point[] out to the District Court,'" that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.

*Id*. at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)(brackets in original)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim.  *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. Rule 56(e).  The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial.  *Celotex Corp.*, 477 U.S. at 322.

### DISCUSSION

Following a review of all the submissions, the Court concludes that St. Paul is entitled to

a declaration that it has no duty to defend or to indemnify Global in the Underlying Litigation pursuant to the Policy in question.  The Policy unambiguously excludes loss resulting from any criminal, dishonest, or fraudulent acts committed by Global or any other protected person under the Policy.  (*See* Policy provision, *supra*).  Ms. Smith's criminal conviction establishes that Ms. Smith committed such acts.  Accordingly, coverage is precluded for the claims asserted by Columbian, Martin and the Deguisnes.

Additionally and alternatively, the Policy's "Handling of Funds" exclusion, quoted *supra*, provides an additional basis for ruling in St. Paul's favor.  Based on that provision, the Court concludes that St. Paul owes no coverage and no duty to defend in connection with all losses alleged in the Underlying Litigation.  *See, e.g.*, *Northland Insurance Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448, 451, 457-59 (6th Cir. 2003)(applying "handling of funds" exclusion to bar coverage for "[a]ny damages arising out of the commingling, conversion, misappropriation or defalcation of funds or other property" and holding that the exclusion applied regardless of whether the alleged conduct was intentional or merely negligent);  *Brokers Title Co. v. St. Paul Fire Marine Insurance Co.*, 610 F.2d 1174, 1176 (3rd Cir. 1979)(applying "handling of funds" to allegations the insured title company negligently failed to remit to the proper taxing authority funds received from a client to satisfy an outstanding tax liability on real estate).

Additionally and alternatively, the Court concludes that St. Paul is entitled to a declaration that the "Known Wrongful Acts" exclusion, quoted *supra*, applies to exclude from coverage any loss resulting from the Underlying Litigation.  (*See* St. Paul's brief in support, at pp. 11-13).

## CONCLUSION

For the reasons herein stated,

IT IS HEREBY ORDERED THAT St. Paul's Motion for Summary Judgment (Docket No. 66) be, and it is hereby, GRANTED.  Judgment will be entered separately.

IT IS SO ORDERED this  16th   day of October, 2006.

   /s/Garnett Thomas Eisele
UNITED STATES DISTRICT JUDGE